IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| RUDOLPH JUGOZ,<br><br>       Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>       Defendants. | Case No.  16-cv-05687-MMC<br><br>**ORDER GRANTING DEFENDANTS EXPERIAN AND EQUIFAX'S MOTIONS TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |
| --- | --- |
| TERESA ROBLES,<br><br>       Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et. al.,<br><br>       Defendants. | Case No.  16-cv-05693-MMC<br><br>**ORDER GRANTING DEFENDANTS EQUIFAX AND WELLS FARGO'S MOTIONS TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |
| JANET PERKINS,<br><br>       Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>       Defendants. | Case No. 16-cv-06347-MMC<br><br>**ORDER GRANTING DEFENDANT EQUIFAX'S MOTION TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court are five motions to dismiss: (1) defendant Experian Information Solutions, Inc.'s ("Experian") motion, filed November 15, 2016,  in Case No. 16-5687; (2) defendant Equifax, Inc.'s ("Equifax") motion, filed December 19, 2016, in Case No. 16-5687; (3) defendant Wells Fargo Bank, National Association's ("Wells Fargo") motion, filed December 19, 2016, in Case No. 16-5693; (4) Equifax's motion, filed December 27, 2016, in Case No. 16-5693; and (5) Equifax's motion, filed December 27, 2016, in Case No. 16-6347.  All five motions have been fully briefed.  Having considered the parties'

written submissions, the Court rules as follows.[1]

## BACKGROUND

In the above-titled actions, brought, respectively, by plaintiffs Rudolph Jugoz ("Jugoz"), Teresa Robles ("Robles"), and Janet Perkins ("Perkins"), each plaintiff has filed a complaint alleging defendants failed to report his/her debts accurately in light of a pending bankruptcy. In particular, each plaintiff alleges the following:

Plaintiff filed for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code and his/her plan was confirmed. (See Jugoz Compl. ¶¶ 93, 97; Robles Compl. ¶¶ 93, 97; Perkins Compl. ¶¶ 87, 94.) Thereafter, plaintiff ordered a three bureau credit report and noticed numerous tradelines therein contained "inaccurate, misleading, or incomplete information that did not comport with credit reporting industry standards." (See Jugoz Compl. ¶¶ 98-99; Robles Compl. ¶¶ 98-99; Perkins Compl. ¶¶ 105-106.)

Plaintiff "disputed the inaccurate tradelines via certified mail with" credit reporting agencies ("CRAs") Experian, Equifax, and TransUnion, LLC, which dispute letter plaintiff is "informed and believes" was sent to the creditors in question. (See Jugoz Compl. ¶¶ 100, 102; Robles Compl. ¶¶ 100, 102; Perkins Compl. ¶¶ 107, 109.) Thereafter, plaintiff ordered another three bureau report and noticed "some of the inaccuracies had not been updated." (See Jugoz Compl. ¶¶ 103-04; Robles ¶¶ 103-04; Perkins Compl. ¶ 110.) In particular, defendants continued to report outstanding and past due balances on plaintiff's debts, which reporting did not reflect the terms of plaintiff's Chapter 13 plan, and continued to fail to "comport[] with Metro 2 industry standards" by "not listing the correct CII D indicator."[2] (See Jugoz Compl. ¶¶ 105-06; Robles Compl. ¶¶ 106-09; Perkins Compl. ¶¶ 111-13.)

---

[1] By order filed May 15, 2017, the Court took the matter under submission.

[2] Use of "CII Metro 2 Code 'D' indicates that a Chapter 13 plan has been filed, is active, but no discharge entered," which "alerts any potential lender that the account is no longer in a collectible status but is being handled by a Chapter 13 trustee." (See Jugoz Compl. ¶ 59; Robles Compl. ¶ 59; Perkins Compl. ¶ 59.)

Based thereon, each plaintiff asserts two causes of action against multiple defendants, comprising creditors of plaintiff (hereinafter, "Creditor Defendants") and two of the three CRAs (hereinafter, "CRA Defendants"). In each of the three cases, the first cause of action is asserted against all defendants under the Fair Credit Reporting Act ("FCRA"), and the second cause of action is asserted against the Creditor Defendants under the California Consumer Credit Reporting Agencies Act ("CCRAA").

Defendants Experian, Equifax, and Wells Fargo (hereinafter, "Moving Defendants"), have, as noted, filed the above-referenced five motions to dismiss; specifically, Equifax seeks dismissal of all three plaintiffs' complaints, Experian seeks dismissal of Jugoz's complaint,[3] and Wells Fargo seeks dismissal of Robles' complaint.[4]

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

---

[3] Robles and Perkins have filed notices advising the Court that their claims against Experian have been resolved and will be dismissed.

[4] As to the remaining defendants: American Honda Finance Corporation has filed an answer to Jugoz's complaint; Robles and Perkins have voluntarily dismissed Bank of America N.A., Enhanced Recovery Company, LLC, Credit First, N.A., and Sterling Jewelers, Inc; and Jugoz has filed a notice advising the Court that his claim against Credit One Bank, N.A. has been resolved and will be dismissed.

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

At the outset, the Court notes that over 170 complaints nearly identical to the three complaints at issue herein have been filed in the Northern District of California over the past year by the same law firm.  Consequently, a number of other judges in this District have ruled on the issues raised by Moving Defendants, and the Court has considered those decisions in connection with the below analysis.[5]

### A.  First Cause of Action – "Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b)"

In the First Cause of Action, plaintiffs allege that defendants violated the FCRA by failing to investigate and remedy the allegedly inaccurate reporting raised in plaintiffs' dispute letters.  In that regard, plaintiffs allege that the Creditor Defendants, which include Wells Fargo, violated 15 U.S.C. § 1681s-2(b) by "failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information" and that the CRA Defendants, namely, Experian and Equifax, violated 15 U.S.C. § 1681i-(a)1 by failing to "conduct a reasonable investigation and fail[ing] to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all."  (See

---

[5] Jugoz, Experian, and Wells Fargo have all filed Statements of Recent Decision, in which they attach various orders by other judges in the District.

Jugoz Compl. ¶¶ 111, 120, 122; Robles Compl. ¶¶ 114, 123, 125; Perkins Compl. ¶ 118, 127, 129.)

Moving Defendants seek dismissal of the First Cause of Action for failure to plead either an inaccuracy or damages, and Wells Fargo additionally argues that Robles' claims are barred by judicial estoppel.

### 1. Inaccuracy

"To state a claim for violation of 15 U.S.C. § 1681i or § 1681s-2(b), a plaintiff must demonstrate 'that an actual inaccuracy exist[s]." Mensah v. Experian Info. Sols., Inc., No. 16-cv-05689 WHO, 2017 WL 1246892, at *5 (N.D. Cal. Apr. 5, 2017) (alteration in original) (quoting Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010)).  If a plaintiff is unable to make a "prima facie showing of inaccurate reporting," his or her claim "fail[s] as a matter of law." See Carvalho, 629 F.3d at 890 (internal quotation and citation omitted).  An item on a credit report is inaccurate under § 1681i or § 1681s-2(b) either where "it is patently incorrect" or "it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Id. (internal quotation and citation omitted) (setting forth standard under § 1681s-2(b)); Mensah, 2017 WL 1246893, at *5 (applying standard to § 1681i).

In the instant cases, plaintiffs rely on two separate theories to support their allegation that defendants' reporting is inaccurate, both of which theories, Moving Defendants argue, fail to plead a claim under the FCRA.

### a. Chapter 13 Confirmation

Plaintiffs allege, as noted above, that defendants' reporting was incorrect or misleading because, after plaintiffs' Chapter 13 plans were confirmed, defendants did not alter their reporting to reflect the terms of the confirmed plans, which plans, plaintiffs further allege, provided for a reduced balance or no balance owed on certain debts. Moving Defendants contend their continuing to report the full outstanding balance of those debts and/or the delinquency of those debts is not incorrect or misleading, particularly where, as here, the debt has not yet been discharged by a bankruptcy court.

United States District Court
Northern District of California

1   The judges in this District who have had occasion to address the issue have, with

2   one exception, agreed with Moving Defendants.  See Lugo v. Experian Info. Sols., Inc.,

3   No. 5:16-cv-06467-EJD, 2017 WL 2214641, at *4 n.5 (N.D Cal. May 19, 2017) (collecting

4   cases); but see Aulbach v. Experian Info. Sols., Inc., No. 16-cv-05716-VC, 2017 WL

5   1807612, at *1 (N.D. Cal. May 4, 2017) (holding "failure to report changes in the nature of

6   debt stemming from a Chapter 13 confirmation can indeed violate the [FCRA]"; noting "at

7   least 11 judges" in district have ruled otherwise).  This Court, as set forth below, is in

8   accord with the majority.[6]

9   Under Chapter 13, a debtor proposes a plan to "repay creditors in part, or in

10  whole, over the course of a three- to-five-year period," which plan is confirmed by a

11  bankruptcy court pursuant to 11 U.S.C. § 1325, and, "[i]f the debtor complies with his

12  obligations under the confirmed plan and makes all the required payments, the

13  [bankruptcy] court will grant the debtor a discharge—if appropriate—and close the case."

14  See In re Blendheim, 803 F.3d 477, 485, 487 (9th Cir. 2015); see also 11 U.S.C. § 1328

15  (setting forth conditions under which discharge may be granted).  "A discharge releases

16  debtors from personal liability on claims and enjoins creditors from taking any action

17  against the debtor in the debtor's personal capacity."  In re Blendheim, 803 F.3d at 486.

18  "Many debtors, however, fail to complete a Chapter 13 plan successfully," and, in the

19  event of such failure, may convert their bankruptcy case "under a different chapter, or

20  dismiss their case entirely."  See id. at 487.  Both conversion and dismissal "return[] to

21  the creditor all the property rights he held at the commencement of the Chapter 13

22  proceeding and render[] him free to exercise any nonbankruptcy collection proceedings."

23  Id.

24  As a debt subject to a Chapter 13 confirmation plan is only fully extinguished after

25  it is discharged by a bankruptcy court, this Court finds persuasive the reasoning of the

26  

27  _____
    [6] In light thereof, the Court does not address herein Experian and Equifax's
    argument that, even if a report is deemed inaccurate, CRAs are not required under the
28  FCRA to resolve the legal validity of plaintiffs' debts and thus cannot be held liable.

6

United States District Court
Northern District of California

judges in this District who have concluded that, "at least prior to discharge, reporting a

loan balance and delinquent status per the original terms—as opposed to the modified

terms of the confirmed Chapter 13 plan—is neither inaccurate nor misleading under the

FCRA." See Basconcello v. Experian Info. Sols., Inc., No. 16-cv-06307-PJH, 2017 WL

1046969, at *6 (N.D. Cal. Mar. 20, 2017).[7]

Plaintiffs' arguments to the contrary are not persuasive. First, plaintiffs' reliance on

the doctrine of res judicata is unavailing, as is plaintiffs' citation to bankruptcy court cases

analogizing a confirmed plan to a new contract. See, e.g., id. at *6 (holding confirmation

order "constitutes a final judgment only as to the manner in which the debtor will

discharge his financial obligations, not the legal validity of the debt"; further holding new

contract "sets the conditions by which debtors may obtain a discharge," not "how

historical credit information must be reported under FCRA") (internal quotation and

citation omitted). Likewise unavailing is plaintiffs' reliance on dicta in In re Luedtke, No.

02-35082-SVK, 2008 WL 2952530 (Bankr. E.D. Wis. July 31, 2008), which concerned

creditors' obligations under § 1327 of the Bankruptcy Code, not under the FCRA. See id.

at *1; see also Mamisay v. Experian Info. Sols., Inc., No. 16-cv-05684-YGR, 2017 WL

1065170, at *5 n.5  (N.D. Cal. Mar. 21, 2017) (setting forth in detail reasons for rejecting

plaintiffs' argument under Luedtke).

The Court acknowledges what "appears to be an open question" as to whether

such reporting could be misleading if it is "unaccompanied by any indication that the

consumer is in bankruptcy." See Anderson v. Experian Info. Sols., Inc., No. 16-cv-03328-

BLF, 2017 WL 914394, at *5 (N.D. Cal. Mar. 8, 2017). Plaintiffs, however, have not

alleged whether or not the reports in question indicated plaintiffs were in bankruptcy, the

---

[7] To the extent one judge in the district has found the change in the nature of a debt after Chapter 13 confirmation can be "significant enough" to support a violation of the FCRA, see Aulbach, 2017 WL 1807612, at *3, the Court disagrees. Although a plan confirmation "may change a debtor's payment obligations and dictate creditors' abilities to collect, it does not change the fact of a debt's delinquency, and . . . new creditors are undoubtedly interested in defaults on prior accounts when determining an applicant's creditworthiness." See Lugo, 2017 WL 2214641, at *4 n. 4.

sole allegation even obliquely touching on the subject being a reference to the content of plaintiffs' dispute letter. (See Jugoz Compl. ¶ 101; Robles Compl. ¶ 101; Perkins Compl. ¶ 108 (alleging plaintiff "put each [c]reditor on notice that [p]laintiff had filed for bankruptcy and the account was not reporting the bankruptcy accurately or worse not at all").)

Accordingly, to the extent plaintiffs rely on the theory that defendants violated the FCRA by failing to report plaintiffs' debts as reflected in plaintiffs' Chapter 13 confirmation plans, the First Cause of Action is subject to dismissal. The Court will afford plaintiffs limited leave to amend in order to allege, if they can, that their credit reports did not contain any indication they were in bankruptcy and, if so, how such omission can be expected to adversely affect credit decisions.

### b. Metro 2 Standards

Plaintiffs next allege that defendants' reporting was incorrect or misleading because defendants did not comport with Metro 2 industry standards. Moving Defendants argue such failure does not violate the FCRA. For the reasons set forth below, the Court agrees.

At the outset, the Court agrees with other courts in this District that have found noncompliance with Metro 2 standards, standing alone, does not render a report inaccurate. See, e.g., Basconcello, 2017 WL 1046969, at *7 (noting "FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards"). Although the Court also acknowledges that, in some instances, such noncompliance might be misleading where, for example, a plaintiff could show that "those making credit decisions . . . would expect that the [defendant] adheres to the Metro 2 format," see Nissou-Rabban v. Capital One Bank (USA), N.A., No. 15cv1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016), plaintiffs here have alleged that "creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies." (See Jugoz Compl. ¶ 7; Robles Compl. ¶ 7; Perkins Compl. ¶ 7.) Consequently, the standards upon which plaintiffs rely "do not appear to actually operate as industry guidelines," and the Court

"fails to see how plaintiffs could allege that a lender looking at the credit report would misconstrue the information based on an expectation that furnishers comply with Metro 2 guidelines for this particular type of report." See Mamisay, 2017 WL 1065170, at *6 n.6.

Accordingly, to the extent plaintiffs rely on the theory that defendants violated the FCRA by failing to adhere to industry standards, the First Cause of Action will be dismissed without leave to amend.

### 2. Damages

Under the FCRA, "[i]f a violation is negligent, the affected consumer is entitled to actual damages." See Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681o). "If [such violation is] willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." Id. (citing 15 U.S.C. § 1681n(a)).

Moving Defendants argue plaintiffs have not adequately pleaded facts to support their allegations as to damages. In particular, Experian and Wells Fargo challenge the sufficiency of Jugoz and Robles' allegations as to actual damages,[8] and the CRA Defendants challenge the sufficiency of all three plaintiffs' allegations as to willfulness, the theory upon which plaintiffs' entitlement to statutory and punitive damages is based.

### a. Actual Damages

Plaintiffs allege they have "suffered actual damages including but not limited to inability to properly reorganize under Chapter 13, [time] reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, [time] sending demand letters, diminished credit score, and such further expenses in an amount to be determined at trial." (See Jugoz Compl. ¶ 143; Robles Compl. ¶ 146; Perkins Compl. ¶ 151.) Experian and Wells Fargo,[9] in moving to dismiss Jugoz and Robles' complaints,

---

[8] None of the Moving Defendants has moved to dismiss Perkins' complaint for failure to plead actual damages.

[9] To the extent Wells Fargo argues Robles has alleged a "bare procedural violation, divorced from any concrete harm," and thus cannot "satisfy the injury-in-fact requirement of Article III," see Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016), the

United States District Court
Northern District of California

argue plaintiffs' allegations are conclusory. For the reasons set forth below, the Court agrees.

First, Jugoz and Robles plead no facts to support their allegation that they were unable to properly reorganize under Chapter 13. In their oppositions, they argue they incurred attorneys' fees in order to "reorganize and repair [their] credit" but have "not received the benefit" of those expenditures. (See Opp. to Experian Mot. at 12:14-15; Opp. to Wells Fargo Mot. at 20:19-20.) Jugoz and Robles may not, however, recover costs they incurred before they notified defendants of the alleged inaccuracies. See, e.g., Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995) (holding "expenses incurred merely to notify [CRAs] of inaccurate credit information" are not recoverable as "actual damages" under the FCRA).

Although not alleged in their complaints, Jugoz and Robles also argue they incurred the cost of obtaining a second credit report that each ordered after initiating the dispute and after failing to receive such report from the CRA Defendants. See 15 U.S.C. § 1681i(a)(6)(A) (requiring CRAs to provide consumer with "written notice of the results of a reinvestigation . . . not later than 5 business days after the completion of the reinvestigation"); id. § 1681i(a)(6)(B) (requiring CRAs, "[a]s part of, or in addition to, the notice under subparagraph (A)," to provide "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation"). Jugoz and Robles will be afforded leave to amend to allege additional facts to support a claim for damages based on such costs.

As to their remaining damages claim, diminished credit scores, Jugoz and Robles again fail to allege sufficient supporting facts. Jugoz, for example, alleges his pre-bankruptcy credit score was 472 and that he anticipated it would rise to 538 twelve

---

Court is not persuaded. See, e.g., Mamisay, 2017 WL 1065170, at *2-3 (holding plaintiffs "alleged a sufficiently concrete injury for purposes of Article III standing"; finding inaccurate reporting of debt "constitutes the precise harm Congress sought to protect against in enacting the FCRA, and thus cannot be classified as a mere procedural violation") (internal quotation and citation omitted).

months post-bankruptcy, but fails to explain how his credit score at the time he ordered the second report, which he alleges was "below 600," is inconsistent with his anticipated credit score. (See Jugoz Compl. ¶¶ 90, 91, 104.)[10] Jugoz and Robles also fail to allege that it was defendants' assertedly inaccurate reporting, rather than plaintiffs' bankruptcy filing or other event, that resulted in any lowered credit score.

Further, even if Jugoz and Robles had adequately pleaded a lowered credit score attributable to Moving Defendants, they have not alleged any resulting harm. Although "no case has held that a denial of credit is a prerequisite to recovery under the FCRA," see Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995), multiple courts have held "a reduced credit score must proximately cause actual injury to support a claim for actual damages under the FCRA," see, e.g., Duarte v. JP Morgan Chase Bank, No. CV 13-1104-GHK (MANx), 2014 WL 12561052, at *4 (C.D. Cal. Apr. 7, 2014) (collecting cases). Here, plaintiffs have not alleged they sustained any actual injury as a result of their alleged diminished credit scores. See Young v. Harbor Motor Works, No. 2:07-cv-31 JVB, 2009 WL 187793, at *5 (N.D. Ill. Jan. 27, 2009) (citing as additional examples of actual damages "lost credit," lowered "credit limits," imposition of "higher interest rate for credit"). Jugoz and Robles will be afforded leave to amend to plead additional facts concerning their claims for damages based on their credit scores.[11]

### b. Willfulness

As set forth above, willful violations of the FCRA are subject to statutory and punitive damages. Plaintiffs allege defendants' "untrue communications" were "willful," but, as pointed out by the CRA Defendants, allege no facts in support of that legal

---

[10] Robles alleges her pre-bankruptcy and anticipated post-bankruptcy credit score (see Robles Compl. ¶¶ 90-91), but does not allege her credit score at the time she ordered the second report.

[11] Although, as noted above, Moving Defendants have not sought dismissal of Perkins' complaint on damages grounds, Perkins' allegations as to that issue are identical to those of Jugoz and Robles, and thus Perkins, in the event she files an amended complaint, likewise should plead additional facts to cure the above-identified deficiencies.

conclusion.  (See Jugoz Compl. ¶ 143; Robles Compl. ¶ 146; Perkins Compl. ¶ 151.)

"A plaintiff seeking to recover damages under a willfulness theory must allege, at a minimum, that the defendant's reading of the FCRA is objectively unreasonable."  See Anderson, 2017 WL 914394, at *6 (internal quotation and citation omitted).  Plaintiffs have not alleged that defendants' conduct was objectively unreasonable and, indeed, may not be able to do so "[g]iven the body of law in this district against plaintiff[s'] primary theory of liability."  See Basconcello, 2017 WL 1046969, at *10.  Nonetheless, the Court will afford plaintiffs the opportunity to amend to plead a claim for statutory and/or punitive damages.  See Balistreri, 901 F.2d at 701.[12]

### 3.  Judicial Estoppel

As an additional ground for dismissal, Wells Fargo contends Robles' case is barred by judicial estoppel because she did not list on her bankruptcy schedule the claims raised in her complaint and "is now seeking to pursue these claims for [her] own benefit to the exclusion of her creditors."  (See Wells Fargo Mot. at 15:27); see also Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778, 783 (9th Cir. 2001) ("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.")

Subsequent to the filing of Wells Fargo's motion, however, Robles, on January 9, 2017, filed a Request for Judicial Notice, in which she attached two amended schedules, each filed that same date with the bankruptcy court and each listing a "[c]ivil claim under the FCRA based upon inaccurate credit reporting by creditors and the reporting bureaus." (See Robles' Req. Judicial Notice, Ex. A at 3, 5.)[13]  Robles' Request for Judicial Notice

---

[12] As Wells Fargo points out, plaintiffs' allegations as to actual damages and willfulness are pleaded exclusively in the portions of their complaints setting forth their state law claims.  (See Jugoz Compl. ¶ 143; Robles Compl. ¶ 146; Perkins Compl. ¶ 151.) Should plaintiffs choose to amend, they are directed to clarify that their damages allegations pertain to both of their two causes of action.

[13] Robles' unopposed request for judicial notice as to the two schedules is hereby GRANTED. See Rosales–Martinez v. Palmer, 753 F.3d 890, 894 (9th Cir. 2014) ("It is

12

1    was filed six days after the filing of Robles' opposition, which made no reference to any

2    intent to amend the bankruptcy schedules, and just one day before the filing deadline for

3    Wells Fargo's reply, which likewise contains no reference to the amended schedules.

4    Under such circumstances, the Court does not further address at this time the parties'

5    respective arguments as to judicial estoppel.  If Robles elects to file an amended

6    complaint, the issue can be raised again, to the extent it remains relevant.

7         **B.  Second Cause of Action – "Violation of California Consumer Credit
     Reporting Agencies Act California Civil Code § 1785.25(a)"**

8

9         In the Second Cause of Action, plaintiffs allege that the Creditor Defendants

10   violated the CCRAA, specifically, § 1785.25(a) of the California Civil Code, by

11   "intentionally and knowingly report[ing] misleading and inaccurate account information to

12   the CRAs that did not comport with well-established industry standards," later "re-

13   report[ing]" that information," and failing to notify Experian and Equifax "that the

14   information [d]efendants re-reported was inaccurate before the end of 30 business days."

15   (See Jugoz Compl. ¶¶ 136, 137, 141; Robles Compl. ¶¶ 139, 140, 144; Perkins Compl.

16   ¶¶ 144, 145, 149.)

17        Wells Fargo, the only Moving Defendant against whom the Second Cause of

18   Action is asserted, argues said cause of action is subject to dismissal for the same

19   reasons as the First Cause of Action.  As set forth below, the Court agrees.

20        "[B]ecause the CCRAA is substantially based on the [FCRA], judicial interpretation

21   of the federal provisions is persuasive authority and entitled to substantial weight when

22   interpreting the California provisions," see Carvalho, 629 F.3d at 889 (internal quotation

23   and citation omitted); consequently, a CCRAA claim ordinarily survives "only to the extent

24   that the FCRA claim survives," see Basconcello, 2017 WL 1046969, at *11.

25        Accordingly, the Second Cause of Action will be dismissed on the same grounds

26

27   _____

     well established that [a court] may take judicial notice of judicial proceedings in other
28   courts.")

1  as, and with limited leave to amend to the same extent afforded plaintiffs with respect to,

2  the First Cause of Action.

3  **CONCLUSION**

4  For the reasons stated, Moving Defendants' motions to dismiss are hereby

5  GRANTED, with limited leave to amend as set forth above.  Should plaintiffs wish to file

6  an amended pleading, each such amended complaint shall be filed no later than July 7,

7  2017.

8  In light thereof, the Case Management Conferences in each of the three above-

9  titled actions are hereby CONTINUED from July 14, 2017, to August 11, 2017, at 10:30

10  a.m.  A Joint Case Management Statement shall be filed no later than August 4, 2017.

11

12  **IT IS SO ORDERED.**

13

14  Dated: June 23, 2017

15  MAXINE M. CHESNEY
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28